IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------  :
UNITED STATES OF AMERICA          : CASE NO.  1:06 CR 00565
                                                        :
                              Plaintiff    :
                                                        :
                                                        :
              -vs-                          : MEMORANDUM OF OPINION AND
                                                        : ORDER DENYING DEFENDANT'S
                                                        : MOTION TO SUPPRESS EVIDENCE
KENNETH SMITH, et al.,                : AND STATEMENTS INCIDENT TO THE
                                                        : 5 MAY 2006 TRAFFIC STOP AND
                              Defendants  : NOTICE OF SUPPRESSION HEARING
------------------------------------------------------  : AND REVIEW OF BOND ON 17 JULY
                                                          2007.


UNITED STATES DISTRICT JUDGE LESLEY WELLS

        Before the Court is defendant Marcellus Thompson's ("Mr. Thompson") motion to

suppress evidence obtained during the search of his automobile and person on 5 May

2006 and evidence seized in the 7 December 2006 search of his mother's home.[1]  In

addition, Mr. Thompson seeks to suppress statements he made to police during the

traffic stop on 5 May 2006.  (Doc. 161).  Specifically, the defendant maintains the

_____

        [1]Mr. Thompson marks the date of the residential search at 7 December 2006, while the
government refers to the search and seizure occurring on 6 December 2006.  For now, the Court will
adopt the 7 December 2006 date as operable.

officers violated his rights under the Fourth Amendment when they performed an

investigative stop, search and seizure on 5 May 2006 because they lacked the requisite

probable cause or reasonable suspicion to believe Mr. Thompson was involved in

criminal activity.  Further, Mr. Thompson maintains the officers lacked the requisite

voluntary consent prior to their seizure of evidence in a search of his mother's home on

7 December 2006.  In response, the government argues the officers possessed the

reasonable suspicion necessary to effect the traffic stop and conducted a reasonable

investigative detention which blossomed into probable cause for his arrest after it

became evident that Mr. Thompson was driving without a license.  The government

further maintains Mr. Thompson's mother provided written consent on a form provided

by the Cleveland Police on 7 December 2006 for the search of her home.

Pursuant to the reasoning set forth below, the Court adduces, as a matter of law

and evidence, that reasonable suspicion and, later, probable cause existed for Mr.

Thompson's arrest. The Court will, accordingly, deny Mr. Thompson's motion to

suppress the evidence seized and statements made on 5 May 2007.  The Court does

not decide, here, whether the evidence seized in the search of Mildred Thompson's

residence was constitutionally reasonable under the Fourth Amendment.


## I.  FACTUAL BACKGROUND

The uncontested evidence presented to the Court indicates that on 5 May 2006

Cleveland Police performed surveillance on an area which included the intersection of

West 28th Street and Detroit Avenue in Cleveland, Ohio.  (Doc. 161, p. 2; Doc 237, p. 2).

According to the government, this effort at surveillance was a joint undertaking between

2

the United States Drug Enforcement Administration and the Cleveland Police Department, begun in the Spring of 2006, and specifically focused on street sales of crack cocaine.  The government maintains such sales were "frequent and often open and notorious" at the corner of West 28th Street and Detroit.

On the morning of 5 May 2006 Detective Neil Hutchinson was posted in the surveillance vehicle approximately forty feet from the intersection.  Detective Hutchinson is a 17-year veteran of the Cleveland Police Department and an experienced narcotics investigator.  (Doc. 237, p. 2).  From his vantage, and aided with binoculars, Detective Hutchinson witnessed Mr. Thompson drive up to the intersection in a red Chrysler, park his car, and engage in a series of "hand-to-hand exchanges" with at least seven different individuals.  (Doc. 161, p. 2; Doc. 237, p. 2).  Detective Hutchinson, the government maintains, viewed Mr. Thompson hand each individual "a smallish object" which the defendant had removed from "a baggie."  (Doc. 237, p. 2).  Concluding that Mr. Thompson was engaged in the sale of drugs, Detective Hutchinson informed nearby officers of his observation.

Mr. Thompson notes that "[n]o audiotapes, photographs or videotapes were made of those transactions."  (Doc. 161, p. 2).  The defendant, further, maintains only that "there was nothing inherently suspicious about the activity."  Id. at 3.

Detective Hutchinson observed Mr. Thompson return to his vehicle after engaging in those transactions, pick up a passenger (later identified as Andrew Gaynor) and drive from the scene.  (Doc. 237, p. 2).  Detective Hutchinson then directed his fellow officers to perform an investigative stop of the defendant's vehicle which the

3

police stopped less than a block from the scene, near the intersection of Franklin Avenue and Fulton Road. Id.

After stopping the vehicle the officers determined that Mr. Thompson was driving without a license. The officers placed the defendant under arrest, searched his person and his vehicle. The officers recovered approximately $1,115.00 in United States Currency incident to search of Mr. Thompson's person. In a search of Mr. Thompson's Chrysler, the police located a "baggie" containing crack cocaine "in the corner of the ceiling directly above the driver's seat." (Doc. 237, p. 3). The police also recovered a bag of marijuana "elsewhere in the vehicle." Id. Mr. Thompson's vehicle was subsequently towed upon order of the police.

Mr. Thompson contends the investigatory detention was improperly conducted because it took the police "an extensive and unreasonable period of time" to locate the crack cocaine. Id. at 4.

On 6 December 2006 the government unsealed a multi-count, multi-defendant Indictment in which Mr. Thompson was named in Counts One and Three. (Doc. 1). On 7 December 2006, pursuant to the Indictment, a warrant for Mr. Thompson's arrest was executed at 3513 West 119th Street, the home of his mother, Mildred Thompson. Officers sought, and received, Ms. Thompson's written consent to search the premises and seized approximately 4.61 grams of crack cocaine from a dresser drawer in the basement. (Doc. 237, p. 3). According to the government, "a family member present at the time indicated that the crack belonged to the defendant." Id. Mr. Thompson maintains the consent "was obtained under circumstances that were inherently coercive" and the consent was sought after the discovery of the drugs. (Doc. 161, p. 5).

4

## II. LAW AND ANALYSIS

The Fourth Amendment ensures "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.  This protection extends to shield the individual from unreasonable arrests and searches by requiring the executed actions rely on probable cause.  Draper v. United States, 358 U.S. 307 (1959).  Our judiciary recognizes, as well established, a defendant's right to urge the suppression of evidence obtained in violation of the Fourth Amendment if the defendant demonstrates an absence of probable cause or reasonable suspicion for the search and seizure. Aldeman v. United States, 394 U.S. 165 (1969);  Rakas v. Illinois, 439 U.S. 128 (1978).

**A.     Search of Mr. Thompson's Mother's Residence**.

As an initial matter, the Court will hold in abeyance for the 17 July 2007 Hearing a determination of the constitutional admissibility of the drug evidence seized by the police from the home of Mr. Thompson's mother – Mildred Thompson – in December 2006.  The defendant contends his mother's written consent was constitutionally invalid because obtained under inherently coercive circumstances.  Mr. Thompson also maintains the consent was not obtained until after the crack cocaine was allegedly discovered in his mother's basement.  (Doc. 161, pp. 5-7).  The government argues the consent was knowingly and voluntarily given and preceded the search of Ms. Thompson's residence.  (Doc. 237, pp. 11-12).

5

**The Court will hold a Suppression Hearing and review Mr. Thompson's bond on 17 July 2007 at 2:00 p.m. in Room 19A, United States Court House, 801 Superior, Cleveland, Ohio.**  The Court will hear testimony, pursuant to the decisions in United States v. Chambers, 395 F.3d 563, 570 (6th Cir. 2006) and United States v. Buchanan, 904 F.2d 349, 355 (6th Cir. 1990), regarding the 7 December 2006 search of Mr. Thompson's mother's home.  Consent must be proved by "clear and positive testimony," Amos v. United States, 255 U.S. 313 (1921), and "must be unequivocal, specific and intelligently given, uncontaminated by any duress or coercion," Simmons v. Bomar, 349 F. 2d 365 (6th Cir. 1965).  See United States v. Hearn, 496 F.2d 236, 244 (6th Cir.), cert. denied, 419 U.S. 1048 (1974).

Further, the evidence before the Court suggests Mr. Thompson possesses standing to assert a Fourth Amendment interest against the search of his mother's residence.  (Doc. 161, p. 5, n. 7).  See also United States v. Moore, 130 Fed. Appx. 728, 734-35, 2005 WL 843740 (6th Cir. 2006).

**B.    Reasonable Suspicion to Stop Mr. Thompson.**

In urging the suppression of evidence seized on 5 May 2006 Mr. Thompson contends the police lacked the "sort of reasonable suspicion to stop the car" as there was "nothing inherently suspicious about the activity in which Thompson was engaged prior to the stop." (Doc. 161, pp. 3-4).

Pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), the police may carry out an investigative stop based upon reasonable suspicion the individual is engaged in criminal

6

activity.   Courts have enunciated the posture of that power to perform an investigative

stop as "brief" to determine "identity or to maintain the status quo momentarily while

obtaining more information."  Adams v. Williams, 407 U.S. 143, 145-46 (1972).  Courts

have recognized that officers "may ask the detainee a moderate number of questions to

determine his [or her] identity and to try to obtain information confirming or dispelling the

officer's suspicions."  Berkemer v. McCarty, 468 U.S. 420, 439 (1984).

The Court expounded on *Terry* in *United States v. Cortez*, 449 U.S. 411, 417-418

(1981), stating,

> [a]n investigatory stop must be justified by some objective manifestation
> that the person stopped is, or is about to be, engaged in criminal activity ...
> the totality of the circumstances--the whole picture--must be taken into
> account. Based upon that whole picture the detaining officers must have a
> particularized and objective basis for suspecting the particular person
> stopped of criminal activity.

Courts have long held that a law enforcement officer lacking probable cause

sufficient to justify an arrest may briefly detain an individual for investigative purposes

without violating the Fourth Amendment if the officer possesses a "reasonable suspicion

that [the defendant] was engaged in wrongdoing when [the officer] encountered him."

U.S. v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).  See also  United

States v. Lopez-Arias, 344 F.3d 623, 627 (6th Cir.2003) (holding that "courts have

recognized that a law enforcement officer who lacks probable cause to justify an arrest

may nevertheless briefly detain an individual without violating the Fourth Amendment if

the officer possesses a reasonable and articulable suspicion that the individual has

committed a crime").  A finding of reasonable suspicion may "arise from information that

7

is less reliable than that required to show probable cause." Alabama v. White, 496 U.S. 325, 330 (1990).

The uncontested record before the Court shows that Detective Hutchinson observed Mr. Thompson's activities on the corner of West 28th and Detroit in Cleveland, Ohio on the morning of 5 May 2006, an area in which street sales of crack cocaine are described as frequent.  From a distance of forty feet, armed with binoculars, Detective Hutchinson observed Mr. Thompson engage in a series of transactions with at least seven separate individuals.  Each transaction involved Mr. Thompson giving each individual "a smallish object removed by Thompson from a baggie."  (Doc. 237, p. 2). Immediately after those exchanges, Mr. Thompson departed driving a red Chrysler which the police stopped less than a block away.  (Doc. 161, p. 3).

The Court concludes from the totality of the circumstances that the police possessed the necessary reasonable and articulable suspicion to stop and question Mr. Thompson as he left the scene in his vehicle.  In an area of known, frequent drug trafficking, the extended observations of an experienced narcotics officer such as Detective Hutchinson afford the police, in this instance, the reasonable suspicion to stop Mr. Thompson's car and inquire further in the belief that he was then violating state drug law.  See, United States v. Johnson, __ F.3d __, 2007 WL 1518075 (6th Cir. 25 May 2007) (finding reasonable suspicion to believe an illicit drug trade occurred where officer's observed a series of apparent drug exchanges);  United States v. Funches, 327 F.3d 582, 587 (7th Cir. 2003) (concluding the totality of the circumstances established probable cause for the officers to infer that the observed, suspicious exchange of shopping bags was illicit, stating "we think the inference of illegal conduct by trained and

8

experienced officers is at least as probable as any innocent inference."); United States v. White, 655 F.2d 1302 (D.C. Cir. 1981) (holding probable cause established where experienced narcotics officers had witnessed an exchange of cash for a small, unknown object in a "high narcotics area").

Accordingly, the Court finds the uncontroverted evidence establishes the necessary reasonable suspicion for the police to justify the initial investigative stop of Mr. Thompson.

### C.    Carrying out the Investigative Stop

Mr. Thompson further contends the investigative stop was conducted improperly by the police as the search of the defendant's car took "an extensive and unreasonable period of time."  (Doc. 161, p. 4).  Relying upon the decision in United States v. Hill, the government maintains the duration of the investigative stop of Mr. Thompson was proper given the officer's discovery that the defendant was driving without a license. United States v. Hill, 195 F.3d 258, 264 (6th Cir. 1999) (finding the duration of an investigative stop may expand to encompass an officer's reasonable suspicion that new, additional criminal activity is afoot).  Mr. Thompson does not contest that he failed to produce a driver's license upon request.

The Sixth Circuit has consistently maintained that a routinely brief investigative stop may expand with the emergence of a reasonable suspicion of additional criminal activity.  See United States v. Erwin, 155, F.3d 818, 822 (6th Cir. 1998); United States v. Mesa, 62 F.3d 159, 163 (6th Cir. 1995); United States v. Garza, 10 F.3d 1241 (6th Cir. 1995).

9

The uncontroverted evidence before the Court indicates the officers, soon after stopping Mr. Thompson, determined he was driving without a driver's license.  As such, the defendant was in prima-facie violation of O.R.C. § 4507.35, requiring the operator's license be on or about the driver's person, producible upon the request of a police officer.  As the Sixth Circuit has recently observed, that prima-facie violation of O.R.C. § 4507.35 furnished the officers with probable cause to effect Mr. Thompson's arrest upon the belief that he was committing a misdemeanor offense.  See United States v. Campbell, 486 F.3d 949 (6th Cir. 2007).[2]  In addition, Mr. Thompson's prima-facie violation provided a separate legal ground upon which to rest the defendant's continued detention during the investigative stop.

Accordingly, the Court finds the uncontested evidence supports the conclusion that the police conducted a proper investigative stop of Mr. Thompson as it blossomed into grounds for establishing probable cause to arrest the defendant.

---

[2]Probable cause is "a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232  (1983).  Probable cause exists where it is shown that, at the moment the arrest was made, the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979).

The Sixth Circuit has recognized that because probable cause demands no more than "a probability or substantial chance of criminal activity," Illinois v. Gates, 462 U.S. at 244 n. 13 (quoted in United States v. Barrett, 890 F.2d 855, 861 (6th Cir. 1989), the "Fourth Amendment does not require that a police officer know that a crime has occurred at the time the officer arrests or searches a suspect." United States v. Strickland, 144 F.3d 412, 415 (6th Cir. 1998).

Probable cause is a standard more stringent than reasonable suspicion, see United States v. Braggs, 23 F.3d 1047, 1049 (6th Cir.), cert. denied, 513 U.S. 907 (1994), but does not require any showing that the officer's suspicions prove to be correct or that they are more likely true than false.  United States v. Sangineto-Miranda, 859 F.2d 1501 (6th Cir. 1988).  In determining whether probable cause exists, the Court must look to the "totality of the circumstances," Gates, 462 U.S. at 230-31, and view the facts "as a whole and in a practical manner."  United States v. Pepple, 707 F.2d 261, 263 (6th Cir.1983).

The uncontested evidence that Mr. Thompson was operating a car without a license provided the officers with the probable cause to arrest him for a prima-facie violation of O.R.C. § 4507.35.

**D.     Search of Mr. Thompson's Person**

Mr. Thompson further contends the search of his person during the investigatory detention, in which approximately $1,115.00 in United States currency was seized, was illegal as the product of an improper stop and detention and because the seizure violated the limited intrusion provisions established in <u>Terry</u>.  (Doc. 161, p. 5).  The government maintains the search of Mr. Thompson was lawful as incident to the defendant's proper arrest.  (Doc. 237, p. 11).

In <u>Chimel v. California</u>, 395 U.S. 752 (1969), the Supreme Court held that where a person is arrested in the person's home, the police may lawfully search the person and the area immediately surrounding him or her incident to that arrest.  "This rule was justified by the need to remove any weapon the arrestee might seek to use to resist arrest or to escape, and the need to prevent the concealment or destruction of evidence." <u>Thornton v. United States</u>, 541 U.S. 615, 620 (2004).  Relying on these dual rationales, the Court, in <u>New York v. Belton</u>, 453 U.S. 454 (1981), held that when a police officer has made a lawful custodial arrest of an occupant of a car, the Fourth Amendment allows the officer to search the person of the occupant and the passenger compartment of that car as a contemporaneous incident of arrest.  <u>Thornton</u>, 541 U.S. at 617.

The Court concludes the search of Mr. Thompson's person and seizure of United States Currency was lawful as incident to his lawful custodial arrest.  <u>See</u> <u>United States v. Campbell</u>, 486 F.3d at 955 (relying on <u>United States v. Robinson</u>, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) to determine that once a lawful arrest has been

made, pursuant to O.R.C. 4507.35, the police officer is permitted to search the individual and the individual's vehicle).

Accordingly, the evidence – currency and illicit drugs – seized as incident to Mr. Thompson's arrest were lawfully recovered.  Mr. Thompson's motion to suppress that evidence is denied.

### E.  Mr. Thompson's Statements on 5 May 2006.

Finally, Mr. Thompson seeks to suppress any and all statements made to officers during the 5 May 2006 detention and subsequent arrest.  (Doc. 161, p. 8).  Mr. Thompson specifically contends his statements, regarding his employment status, must be suppressed as "fruit of the poisonous tree" pursuant to the holding in Wong Sun v. United States, 371 U.S. 471, 485 (1963).

Mr. Thompson's 5 May 2006 statement will not be suppressed pursuant to the "fruit of the poisonous tree" doctrine, as the search and seizure did not bring forth a poisonous tree.  As the Court has determined that the investigative stop, the subsequent detention and arrest of Mr. Thompson, as well as the search of his person and vehicle were each constitutionally reasonable under the Fourth Amendment, the defendant's statements, made during this incident, are also constitutionally reasonable.

### III. CONCLUSION

For the reasons discussed above, this Court denies Mr. Thompson's motion to suppress the evidence seized and statements made incident to the traffic stop on 5 May 2007.  The issue of whether evidence seized in the search of Mildred Thompson's

residence was constitutionally infirm under the Fourth Amendment will be heard on **17 July 2007 at 2:00 p.m. at the United States Court House, Room 19A, 801 Superior, Cleveland, Ohio**.

      IT IS SO ORDERED.

                                        /s/Lesley Wells               
                                      UNITED STATES DISTRICT JUDGE

Dated: <u>12 July 2007</u>