IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------  :
UNITED STATES OF AMERICA           : CASE NO.  1:06 CR 00565
                                   :
               Plaintiff           :
                                   :
        -vs-                       : MEMORANDUM OF OPINION AND
                                   : ORDER DENYING DEFENDANT
                                   : THOMPSON'S SECOND MOTION TO
KENNETH SMITH, et al.,             : SUPPRESS EVIDENCE AND
                                   : STATEMENTS INCIDENT TO THE 5
               Defendants          : MAY 2006 TRAFFIC STOP
------------------------------------------------------  :

UNITED STATES DISTRICT JUDGE LESLEY WELLS

Before the Court is defendant Marcellus Thompson's ("Mr. Thompson") Second Motion to Suppress evidence obtained, and statements made, during the search of his automobile and person on 5 May 2006.  (Doc. 355).  The government has responded with a brief in opposition.  (Doc. 359).  In response, the Court held a suppression hearing on 24 March 2008.

By way of background, the Court denied Mr. Thompson's first Motion to Suppress in a Memorandum and Order on 12 July 2007. (Doc. 259).   In that instance, the Court determined from the record presented without a hearing, that the surveillance officer, Detective Neil Hutchinson, of the Cleveland Police, possessed reasonable suspicion to order an investigative stop of the defendant's vehicle after he witnessed Mr. Thompson engage in a series of "hand-to-hand" crack cocaine sales on the corner of West 28th Street and Detroit Avenue in Cleveland, Ohio the morning of 5 May 2006.

(Doc. 259 pp. 6-9). Further, the Court found the reasonable suspicion developed into probable cause for arrest after Mr. Thompson was stopped and admitted to driving without an operator's license in violation of O.R.C. § 4507.35. The Court found the currency and illicit drugs seized were lawfully recovered incident to Mr. Thompson's arrest on 5 May 2006. Finally, the Court found the admission of Mr. Thompson's statements to officers on 5 May 2006 constitutionally reasonable.

The Court reopened the issue of suppression in this matter on the narrow question of whether the surveillance officer possessed reasonable suspicion to direct other Cleveland officers to stop Mr. Thompson's vehicle after allegedly observing the defendant engage in "hand-to-hand" crack cocaine sales. This is the single issue involved in the current suppression hearing.

In his Second Motion for Suppression the defendant argues, first, that Special DEA Agent Lee Lucas' involvement in the case raised a serious credibility issue. Second, Mr. Thompson maintains that newly discovered witnesses contradict the government's claim that he was engaged in the drug transactions under surveillance.

The Court will deny Mr. Thompson's Second Motion to Suppress evidence found, and statements made, on 5 May 2006 for the reasons discussed below.

In the 24 March 2008 suppression hearing, the Court heard testimony from the government's sole witness Detective Neil Hutchinson ("Detective Hutchinson"). Detective Hutchinson provided credible testimony of his surveillance of the activity on the corner of West 28th and Detroit the morning of 5 May 2006, a location the Cleveland police categorize as a "high drug" area. Under cross-examination, the Detective noted that during the course of approximately fourteen minutes, from 11:40 a.m to 11:54 a.m.

2

an individual, later identified as Mr. Thompson, engaged in at least seven transactions with other individuals before leaving the site driving a vehicle.  Detective Hutchinson observed these transactions while concealed from a distance of thirty to forty feet.  To Detective Hutchinson's trained eye, those transactions bore the earmarks of individual drug deals.  For instance, Detective Hutchinson testified that he observed Mr. Thompson hand clear plastic bags containing some object to each individual in exchange for cash; these individuals would pocket the bag, Mr. Thompson would pocket the cash, and the presumptive buyers would leave the surveillance area.  On cross-examination, Detective Hutchinson credibly testified that it was standard procedure in this type of surveillance action to observe the suspicious activity first-hand rather than to take notes, or record audio or visual activity during the surveillance.

After Mr. Thompson left the scene in his car, Detective Hutchinson notified other, nearby, vice squad officers to stop the defendant on the reasonable suspicion that he was dealing in the sale and distribution of drugs.  Mr. Thompson's vehicle was pulled over almost immediately by Cleveland Police.  In a search incident to his arrest, Mr. Thompson was found to have secreted crack cocaine above the driver's side visor of his car and was found to be carrying approximately $1,115.00 in cash on his person.

Detective Hutchinson testified that his surveillance activity of Mr. Thompson was not connected to any DEA activity at the time of the observations and that he relied upon the Cleveland vice squad to stop the defendant's vehicle.  Upon cross-examination, Detective Hutchinson further credibly testified that he personally verified the facts reported in the narrative of the arrest incident subsequently submitted by the DEA.  While that report was written by Special Agent Lee Lucas, Detective Hutchinson

3

testified that he fully validated the factual contents of the pertinent paragraphs prior to its release. (Plaintiff's Exhibit 5; ¶¶ 2, 3). Detective Hutchinson testified that it was standard practice for the local, Cleveland police to allow the DEA to submit the incident narrative, as they did here, when the DEA assumed control of the case. Finally, Detective Hutchinson testified that after verifying the DEA narrative report he attached a Cleveland police offense report or "face sheet" detailing the activity related to Mr. Thompson's arrest. (Plaintiff's Exhibit 4).

Mr. Hutchinson's credible testimony regarding his central and singular role in the surveillance of Mr. Thompson removes any taint which might be thought to be caused in this matter by Mr. Lucas' production of the DEA incident report.

At the close of the government's witness testimony, Mr. Thompson put forth two newly identified witnesses who testified to their encounter with the defendant on 5 May 2006. First, Ms. Andra Smith testified that sometime between noon and 1:00 p.m., she and Jacquilene Johnson ("Ms. Johnson") drove to the corner of Detroit and West 28th Avenue where they stopped to collect money for food orders they planned to prepare later that day for paying customers. Ms. Smith testified that she did not see Mr. Thompson on the corner because she remained in the car.

However, her assistant, Ms. Johnson, then testified that when the two women were at the location collecting money for food orders, Mr. Thompson drove by, stopped his vehicle, paid her for a dinner he had earlier ordered for that evening, and immediately drove off. Ms. Johnson testified that she and Ms. Smith left the location almost immediately after Mr. Thompson. As to the exact time of this encounter, Ms.

4

Johnson testified that it was before noon.  Ms. Johnson's further testimony was unclear as to when and how Mr. Thompson had placed his dinner order earlier in the week.

The Court does not find Ms. Johnson's testimony credible.  The genesis of Mr. Thompson's food order, the events surrounding Ms. Johnson's chance encounter with the defendant on the corner of West 28th and Detroit, and the varied time frames for the stop as recalled by Ms. Smith and Ms. Johnson, as well as her demeanor while testifying, all combine to undermine the credibility of Ms. Johnson's testimony.

Moreover, even if the Court were to find Ms. Johnson's testimony credible, the account given does not necessarily conflict with the precise observations of Detective Hutchinson.  The slim time frame in which the Detective observed Mr. Thompson engaging in transactions could well have occurred after Ms. Johnson and Ms. Smith departed.  Ms. Johnson's testimony, if accepted, places Mr. Thompson at the scene and has the two women leaving the location sometime prior to noon.

Finally, the defendant's argument, predicated upon Ms. Johnson's testimony, that Detective Hutchinson mistook Mr. Thompson's transaction of paying for a food order with carrying on a suspected corner drug trade does not hold up under scrutiny.  First, Detective Hutchinson specifically testified he had Mr. Thompson under surveillance for transactions in which he *accepted* money in exchange for what appeared to be bags of crack cocaine on at least seven separate occasions within a span of fourteen minutes.  In contrast, under the defendant's urged scenario, Detective Hutchinson misconstrued Mr. Thompson's *giving* cash to Ms. Johnson and receiving nothing in return as a drug deal the defendant was engaged in as a seller.  However, nothing in Detective Hutchinson's testimony betrays any such confusion regarding the nature, form, and

5

appearance of the suspected drug transactions between Mr. Thompson and the series of buyers receiving "baggies" after giving the defendant cash. For the reasons discussed above, this Court denies Mr. Thompson's Second Motion to Suppress the evidence seized and statements made incident to the traffic stop on 5 May 2007. The Court's 12 July 2007 Memorandum and Order denying Mr. Thompson's first Motion to Suppress remains in full force and effect as it pertains to the evidence seized from, and statements made by, the defendant on 5 May 2007.

IT IS SO ORDERED.

    /s/Lesley Wells
    UNITED STATES DISTRICT JUDGE